**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| TAM HOANG, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:19-cv-01971 |
| | § | |
| MICROSEMI CORPORATION and | § | |
| MICROCHIP TECHNOLOGY | § | |
| INCORPORATED, | § | |
| | § | |
| Defendants. | § | |

---

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

---

*/s/ Mark Kisicki*
Mark G. Kisicki, *pro hac vice*
State Bar of Arizona:  016953
Aaron S. Nava, *pro hac vice*
State Bar of Arizona: 036428
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
2415 East Camelback Road, Suite 800
Phoenix, AZ  85718
602-778-3700 – Telephone
602-778-3750 – Facsimile
Mark.Kisicki@ogletreedeakins.com
Aaron.Nava@ogletreedeakins.com

Carolyn Russell
State Bar No. 24003913
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
500 Dallas St., Ste. 3000
Houston, TX  77002
713-655-0855 – Telephone
713-655-0020 – Facsimile
carolyn.russell@ogletreedeakins.com

**ATTORNEYS-IN-CHARGE FOR**
**DEFENDANTS**

i

**OF COUNSEL:**

Devin S. Vasquez
State Bar No. 24098543
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
500 Dallas St., Ste. 3000
Houston, TX  77002
713-655-0855 – Telephone
713-655-0020 – Facsimile
Devin.vasquez@ogletreedeakins.com

## **TABLE OF CONTENTS**

I.    NATURE AND STAGE OF THE PROCEEDINGS ......................................................... 1

II.   STATEMENT OF THE ISSUES.......................................................................................... 2

   (1)      Whether Plaintiff can establish a *prima facie* claim of race/national origin

   discrimination under Title VII, the TCHRA, and Section 1981? ...................................... 2

   (2)      Whether Plaintiff can establish a *prima facie* claim of age discrimination under

   the ADEA and the TCHRA?.............................................................................................. 2

   (3)      Whether Plaintiff can demonstrate evidence of pretext to rebut Microsemi's

   legitimate business decision to reorganize its QA Group and eliminate his position?....... 2

III.  STANDARD OF REVIEW ................................................................................................. 2

IV.   SUMMARY OF THE ARGUMENT ................................................................................. 2

V.    UNDISPUTED MATERIAL FACTS ............................................................................... 3

   A.    Microsemi's Software Solutions Business and QA Group's Function.................. 3

   B.    Plaintiff's Refusal to Accept Severance or Mitigate His Alleged Damages. ......... 9

VI.   ARGUMENT ...................................................................................................................... 10

   A.    Plaintiff Cannot Establish a *Prima Facie* Case of Race or National Origin

   Discrimination Under Title VII, the TCHRA, or Section 1981........................................ 11

   B.    Plaintiff Cannot Establish a *Prima Facie* Case of Age Discrimination Under the

   ADEA or TCHRA............................................................................................................. 13

C.      Microsemi's Nondiscriminatory Reason for Eliminating Plaintiff's Position Is Legitimate, and Plaintiff Cannot Point to Any Evidence Demonstrating it is a Pretext for Discrimination Based on his Age or National Origin. ...................................................... 15

D.      Plaintiff's Claims for Damages Are Barred Because He Failed to Mitigate Any Alleged Damages, and He Produced Evidence That Would Have Justified Termination of His Employment. ........................................................................................................... 18

VII.    CONCLUSION ........................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bienkowski v. Am. Airlines, Inc.*,
  851 F.2d 1503 (5th Cir.1988) ...................................................17

*Bodenheimer v. PPG Indus., Inc.*,
  5 F.3d 955 (5th Cir. 1993) .....................................................15

*Bullard v. OMI Georgia, Inc.*,
  640 F.2d 632 (5th Cir. 1981) ....................................................1

*Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*,
  482 F.3d 408 (5th Cir. 2007) ..................................................16

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986)...........................................................2

*Chavarria v. Despachos Del Notre, Inc.*,
  390 F. Supp. 2d 591 (S.D. Tex. 2005) ................................10, 11, 14

*E.E.O.C. v. Tex. Instruments Inc.*,
  100 F.3d 1173 (5th Cir. 1996) .................................................16

*Elliot v. Grp. Med. & Surgical Serv.*,
  714 F.2d 556 (5th Cir. 1983) ..................................................16

*Houser v. Sears, Roebuck & Co.*,
  627 F.2d 756 (5th Cir. 1980) ..................................................15

*Jackson v. Cal-Western Packaging Corp.*,
  602 F.3d 374 (5th Cir. 2001) ..................................................14

*Kelly v. Costco Wholesale Corp.*,
  632 Fed. App'x 779 (5th Cir. 2015) ............................................14

*McMichael v. Transocean Offshore Deepwater Drilling, Inc.*,
  934 F.3d 447 (5th Cir. 2019) ..............................................14, 16

*Powers v. Northside Indep. Sch. Dist.*,
  951 F.3d 298 (5th Cir. 2020) ..................................................18

*Reed v. Neopost USA, Inc.*,
  701 F.3d 434 (5th Cir. 2012) ...............................................1, 14

*Reeves v. Sanderson Plumbing Prods., Inc.*,
    530 U.S. 133 (2000)........................................................................................15

*Roberson v. Alltel Info. Servs.*,
    373 F.3d 647 (5th Cir. 2004) .....................................................................16, 18

*Rosenblatt v. 7-Eleven, Inc.*,
    No. CIV.A. 3:06-CV-0957D, 2007 WL 2187252 (N.D. Tex. July 27, 2007) .........................17

*Sanchez v. Chevron N. Amer. Exploration & Prod. Co.*,
    No. 19-11232, 2020 WL 6685002 (E.D. La. Nov. 12, 2020) ...................................1

*Smith v. Bd. of Supervisors of S. Univ.*,
    656 Fed. App'x. 30 (5th Cir. 2016) .............................................................16

*Smith v. Houston Indep. Sch. Dist.*,
    No. 4:12-CV-3083, 2014 WL 4471386 (S.D. Tex. Sept. 9, 2014) ...........................11

*St. Mary's Honor Ctr. v. Hicks*,
    509 U.S. 502 (1993)........................................................................................15

*Villarreal v. Tex. A & M Sys.*,
    561 Fed. App'x 355 (5th Cir. 2014) ........................................................2, 10, 11

*Weeks v. Coury*,
    951 F. Supp. 1264 (S.D. Tex. 1996) ...........................................................19

*Williams v. Galveston Indep. Sch. Dist.*,
    256 F. Supp. 2d 668 (S.D. Tex. 2003) ...........................................................1

*Woodhouse v. Magnolia Hosp.*,
    92 F.3d 248 (5th Cir. 1996) ......................................................................13

**Statutes**

Age Discrimination in Employment Act of 1967, 29 U.S.C. § 623(a) ....................1, 2, 13, 14, 17

Civil Rights Act Title VII ....................................................................1, 2, 11

42 U.S.C. § 1981………………………………………………………………...............1, 2, 11

Texas Commission on Human Rights Act, Tex. Lab. Code § 21.001 et seq...................................1

**Other Authorities**

Federal Rule of Civil Procedure 56 .............................................................................1

Federal Rule of Civil Procedure 56(a) .......................................................................2

Vietnamese Genealogy, *Vietnam Online: Travel Guide For the New Decade*,
    https://www.vietnamonline.com/az/vietnam-genealogy.html (last visited Oct.
    1, 2021) ................................................................................................................................12

## <u>DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>

Pursuant to Federal Rule of Civil Procedure 56, Defendants Microsemi Corporation and Microchip Technology Incorporated request this Court enter summary judgment in their favor and dismiss Plaintiff Tam Hoang's lawsuit with prejudice.

## I.     NATURE AND STAGE OF THE PROCEEDINGS

This is a disparate treatment employment discrimination case. Plaintiff's Complaint alleges that Microsemi selected him for layoff and terminated his employment in January 2018 based on his national origin and race (Vietnamese and Asian), in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 1981[1] and the Texas Commission on Human Rights Act, Tex. Lab. Code § 21.001 et seq. ("TCHRA"), and/or because of his age, in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 623(a) ("ADEA") and the TCHRA.[2] [Dkt. 1.] (Plaintiff also named Microchip as a defendant because Microchip subsequently acquired Microsemi.) The parties have completed discovery, with the exception of one stipulated witness deposition. Defendants have also filed a Daubert Motion. [Dkt. 52.] As explained below, Defendants are entitled to judgment and dismissal of this case as a matter of law.[3]

---

[1] Plaintiff's Complaint alleges both race and national origin discrimination in violation of 42 U.S.C. § 1981. However, Section 1981 does not provide for a claim of national origin discrimination. *See Sanchez v. Chevron N. Amer. Exploration & Prod. Co.*, No. 19-11232, 2020 WL 6685002 (E.D. La. Nov. 12, 2020) (collecting citations).

[2] The same principles and authority, including the *McDonnell Douglas* burden shifting framework, apply to Title VII, the TCHRA, and Section 1981. *See Reed v. Neopost USA, Inc.*, 701 F.3d 434, 439 (5th Cir. 2012) (holding that Title VII and "the cases interpreting [it] guide [courts'] reading of the TCHRA"); *Williams v. Galveston Indep. Sch. Dist.*, 256 F. Supp. 2d 668 (S.D. Tex. 2003) ("The Court's inquiry into intentional race discrimination is essentially the same for individual actions brought under [Section] 1981 . . . and Title VII.") (internal quotation marks and citations omitted). Further, Fifth Circuit courts treat race and national origin claims as indistinguishable when pled together. *See Bullard v. OMI Georgia, Inc.*, 640 F.2d 632, 634 (5th Cir. 1981). Accordingly, Defendants specifically address Plaintiff's Title VII race/national origin claim in this Motion for Summary Judgment, but represent to the Court that the arguments and authorities also apply to Plaintiff's TCHRA and Section 1981 claims.

[3] This Motion for Summary Judgment is based upon this supporting brief and attached exhibits; the accompanying supporting Declarations of David Sheffield ("Sheffield Decl."), Mike Bondi ("Bondi Decl."), Mike Tran ("Tran Decl."), and Lauren Carr ("Carr Decl."), and the exhibits referenced therein; excerpts from the deposition of Tam Hoang ("Hoang Dep."); and any other evidence or arguments which may be presented to the Court.

## II.   STATEMENT OF THE ISSUES

(1)   Whether Plaintiff can establish a *prima facie* claim of race/national origin discrimination under Title VII, the TCHRA, and Section 1981?

(2)   Whether Plaintiff can establish a *prima facie* claim of age discrimination under the ADEA and the TCHRA?

(3)   Whether Plaintiff can demonstrate evidence of pretext to rebut Microsemi's legitimate business decision to reorganize its QA Group and eliminate his position?

## III.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) allows courts to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When the burden of proof at trial lies with the nonmoving party, the movant may satisfy its burden by "showing—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Plaintiff, to avoid summary judgment, must submit or identify specific record evidence demonstrating a genuine issue of material fact concerning "every essential component of [his] case." *Celotex*, 477 U.S at 323. Summary judgment is appropriate if Plaintiff "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 324.

## IV.   SUMMARY OF THE ARGUMENT

Plaintiff has the burden of convincing a jury that Microsemi intentionally discriminated against him by selecting him for a RIF due to his Vietnamese ancestry or because of his age. As he has no direct evidence of discrimination, he must rely on the *McDonnell Douglas* burden shifting approach as the Fifth Circuit has tailored it for RIF cases. *See Villarreal v. Texas A & M Sys.*, 561 Fed. App'x 355, 358 (5th Cir. 2014) (plaintiff in RIF context must show they were qualified to assume another position at the time of termination, and sufficient evidence exists from

2

which a fact finder may reasonably conclude that the employer intended to discriminate against him or her). Only after making that showing does the burden of production shift to the defendant to articulate a legitimate reason for taking adverse action against the plaintiff.

Plaintiff cannot shift the burden of production to Defendants because he cannot establish even a *prima facie* case on any of his claims. Plaintiff was one of three managers in Microsemi's QA Group when the QA Director, David Sheffield, decided he needed just two managers, and that he could eliminate one manager position. Sheffield worked with the company's Human Resources ("HR") Director and an HR representative to follow Microsemi's RIF Practice (which was not a policy, but a confidential HR practice), and select which manager would be laid off. Like Plaintiff, the other two managers were Asian, though not Vietnamese, and one was nearly Plaintiff's age.

Even if Plaintiff were able to establish the *prima facie* elements of his race/national origin or age claims, which he cannot, his claims would still fail because Microsemi had a legitimate, non-discriminatory reason for terminating his employment. Microsemi lawfully implemented a RIF and selected Plaintiff for termination based on objective factors and because it only needed two managers, not three. Plaintiff can point to no evidence of pretext, and he admits that he has no evidence the decision-maker even knew his race/national origin or age. For these reasons, the Court should grant summary judgment in Defendants' favor.

## V.   UNDISPUTED MATERIAL FACTS

### A.   Microsemi's Software Solutions Business and QA Group's Function.

At the time Plaintiff was RIF'd in January 2018, he was one of three managers in the QA Group within Microsemi's Software Solutions Group ("SSG"). [Ex. 1, David Sheffield Decl. ¶ 18.] The other two managers were Hinendra Somaiya and Arvind Chandrasekaran. [*Id.*] The SSG produces software-based products, called solutions, for retrieving computer data, and the QA

Group function within the SSG is to test the solutions being created by the SSG's Development Group. [*Id.* ¶ 3.]

In late 2016, the QA Director resigned and Microsemi Vice President of the SSG, John Buck, asked senior engineer Mike Tran – who is also Asian and born in Vietnam – if there was anyone he would recommend for the position. [Ex. 2, Mike Tran Decl. ¶¶ 3, 10–11.] Having known David Sheffield for 16 years and believing he was well-qualified and a "perfect" fit for the QA Director role, Tran sent Sheffield a text message and encouraged him to apply. [*Id.* ¶¶ 5, 12.] In the 16 years he has known Sheffield, Tran never heard Sheffield say a discriminatory or derogatory remark about any person based on their Asian race or national origin, nor about any person based on their national origin, race, or age. [*Id.* ¶¶ 5–7.] If Tran had witnessed any of these negative comments or discriminatory behavior, he would not have recommended that Microsemi hire Sheffield, or actively recruited him – to be his boss – for the QA Director position. [*Id.* ¶ 7.]

In May 2017, Microsemi hired Sheffield to be the QA Group Director and Buck charged him to change the QA Group's focus from manual testing (which is labor intensive) to automated testing (in which the test engineers create software programs to run the tests), as an automated test engineer can test many times the number of products in far less time than an engineer who is testing a product manually. [Ex. 1, Sheffield Decl. ¶ 10.] Automated testing is also a key aspect of "Agile Manufacturing" methodology in a software development quality group. [*Id.*] In a software development environment, Agile Manufacturing also emphasizes cooperative and collaborative teamwork with the quality engineering team, and between the individual quality team engineers and the development engineers. [*Id.* ¶¶ 9–10.]

After becoming the QA Director, Sheffield took several weeks to evaluate the QA Group's operations and then, in July 2017, he reorganized it somewhat by reallocating various management

responsibilities among the three managers. [*Id.* ¶ 12.] In particular, because Plaintiff's work experience had focused on manual testing and managing manual test engineers, and because Sheffield had concluded that Plaintiff was not adequately committed to increasing the QA Group's reliance on automated testing while decreasing its reliance on manual testing, Sheffield assumed direct management of the entire "Level 1" team of automated test engineers. [*Id.*] Before February 2017, the Level 1 automated test engineers who supported array controller products had reported to Somaiya, but in February 2017, the SSG Development Director, who was then acting temporarily as the interim QA Director, had reorganized the QA Group by moving that group of Level 1 engineers to report to Plaintiff. [*Id.* ¶ 13.]

As Sheffield continued observing the QA Group, it became apparent to him that Plaintiff refused to support Agile Manufacturing processes. [*Id.* ¶ 14.] On one occasion, Sheffield directed the leadership team to automate the process of collecting and presenting the QA Group's product testing metrics, as that process was being done manually at the time by engineers on Plaintiff's team. [*Id.* ¶ 15; Ex. 2, Tran Decl. ¶ 17.] Sheffield specifically instructed Tran to work with Plaintiff and Plaintiff's team to understand the process they had been using to generate the metrics, so that he could automate it. [Ex. 1, Sheffield Decl. ¶ 15; Ex. 2, Tran Decl. ¶ 17.] After a number of days, Tran learned that the entire methodology Plaintiff's team was using to generate the metrics, which were then used in the report of the QA Group's testing results, was fatally flawed. [Ex. 1, Sheffield Decl. ¶ 15; Ex. 2, Tran Decl. ¶ 17.] The metrics were flawed, in part, because the queries Plaintiff's team was using did not limit test results to the engineers who were actually testing the particular product. [Ex. 1, Sheffield Decl. ¶ 15; Ex. 2, Tran Decl. ¶ 17.] After nearly two weeks of Tran's dedicated efforts – and numerous email exchanges on which Plaintiff had been copied – Plaintiff

emailed the group and stated that the data he presented was "raw" and not intended to be reliable. [Ex. 1, Sheffield Decl. ¶ 15; Ex. 2, Tran Decl. ¶ 17.]

In another example, in June 2017, Sheffield hosted a staff meeting to discuss a freeze/antifreeze feature in a software group the team was currently working on. [Ex. 1, Sheffield Decl. ¶ 16; Ex. 2, Tran Decl. ¶ 18.] During this meeting, Plaintiff made a negative, sarcastic comment toward Tran, who had communicated directly with the client to obtain necessary drive firmware and resolve testing discrepancies. [Ex. 1, Sheffield Decl. ¶ 16; Ex. 2, Tran Decl. ¶ 18.] Sheffield got extremely upset, and told Plaintiff that his behavior "has got to f***ing stop" because Plaintiff's criticisms directly contradicted Sheffield's previous instructions that he expected the entire QA Group to communicate openly and directly. [Ex. 1, Sheffield Decl. ¶ 16; Ex. 2, Tran Decl. ¶ 18.]

Although Plaintiff adamantly disagreed with automated testing and refused to support Agile Manufacturing, he never complained to anyone at Microsemi that Sheffield treated him differently because of his race/national origin or age. [Ex. 3, Hoang Dep. 231:14–232:4.] For example, Plaintiff claims that Sheffield once "saluted" him with his middle finger when no other witnesses were around, but Plaintiff ultimately interpreted this as a "friendly salute." [*Id.* 229:23–230:23.] Indeed, Plaintiff never disclosed his race/national origin or age to Sheffield. Plaintiff does not remember ever telling Sheffield his age, but merely assumes Sheffield *should* have known he was 58 years old because he believes that he "look[s]" his age. [*Id.* 216:25–217:13.] Similarly, he never told Sheffield he was Vietnamese, but he claims it is "reasonable" for Sheffield to assume employees' national origins or races by merely looking at them. [*Id.* 166:9–17; 217:18–218:14.]

By late 2017, after observing the group for about six months, and in light of the QA Group's shifting focus from manual to automated testing, Sheffield concluded that QA needed one fewer

manual test engineering manager, and one fewer manual testing staff engineer. [Ex. 1, Sheffield Decl. ¶ 18.] Because Sheffield's goal was to eliminate (and not replace) a manager position and a staff engineer position, he was advised by Microsemi's HR Director about the company's RIF Practice, and instructed by him to follow it. [*Id.* ¶¶ 19–20; Ex. 4, Mike Bondi Decl. ¶ 8.] Microsemi's RIF Practice was, as titled, a practice and not a policy; it was confidential to HR employees and shared only with managers who needed to conduct a RIF. [Ex. 4, Bondi Decl. ¶¶ 4–6.] The RIF Practice provided a detailed framework for HR to work with a manager in identifying the purpose of the RIF, defining which employees were similarly situated and therefore needed to be included in the rating and ranking process, defining the particular factors that would be used to rate employees in the group subject to the RIF, then applying those factors to select the lowest-rated employee(s). [*Id.*] Microsemi's RIF Practice designated four general evaluation categories: Job Criticality, Flexibility, Performance, and Years of Company Service, but in every RIF, all factors other than seniority have to be refined to fit the RIF's particular purpose. [*Id.*] For example, the RIF Practice makes clear that "Performance" is not historical, but forward looking, to address future expectations under defined business plans. [*Id.*] To ensure compliance with the process and Microsemi's anti-discrimination and other policies, HR representatives are involved at every step, and the targeted group, criteria, and selection of the impacted employee(s) is not final without the HR Director's approval. [*Id.* ¶¶ 4–6.] The HR Director also advised Sheffield and the HR representative that the appropriate group of employees to include in each of the two groups to be reduced included all similarly situated QA employees based on sharing the same official (HR-designated) job titles. [*Id.* ¶ 8.]

Microsemi followed the RIF Practice in determining which manager and which staff engineer to lay off. [Ex. 1, Sheffield Decl. ¶ 28.] Sheffield explained in the "RIF Candidate

Selection" forms that 'significant process transformations within the QA" Group required him to restructure the group and consolidate certain positions as the group transitioned to Agile Manufacturing methodologies, including greater reliance on automated testing. [Ex. 1, Sheffield Decl.  ¶ 24.] Sheffield provided his detailed analysis of the manager he rated most poorly in comparison to the other (two) managers, and a separate analysis of the staff engineer he rated most poorly compared to all the other (six) staff engineers. [*Id.*] Plaintiff's and Michael Hoang's evaluations under the Job Criticality criterion, along with an objective score, are provided in an accompanying evaluation spreadsheet. The Job Criticality rating is determined by scoring each of the similarly-situated employees in the RIF group using one to five points on each factor developed to fit the position and future direction of the business unit. [Ex. 1, Sheffield Decl. ¶ 22; Ex. 4, Bondi Decl. ¶ 4.] In this case, Sheffield worked with the HR representative to identify five appropriate factors: 1) Depth of Agile System Understanding; 2) Agile System Engagement and Implementation; 3) Analytical & Troubleshooting Skills; 4) Ability to Quickly Assess and Identify & Solve Validation Issues; and 5) Diversified and Broad Product Knowledge. [Ex. 1, Sheffield Decl. ¶ 22, Ex. 4, Bondi Decl. ¶ 9.] After evaluating each manager, Sheffield totaled their scores, then divided each score by five to produce an averaged Job Criticality rating. [Ex. 1, Sheffield Decl. ¶ 24.]  Plaintiff's overall rating was the lowest. [*Id.*] After following this same evaluation process for the staff engineers, Michael Hoang's overall rating was the lowest. [*Id.*]

As Plaintiff received the lowest score, he was identified as the manager to be laid off, but first, the HR Director had to review and approve the selection process and result. [Ex. 1, Sheffield Decl. ¶ 25; Ex. 4, Bondi Decl. 10.] Because Sheffield's goal was to increase automated testing in the QA Group rather than manual testing, Microsemi eliminated Plaintiff's position and never hired a manager to replace him. [Ex. 1, Sheffield Decl. ¶ 26.] Under the same RIF Practice, Michael

Hoang was identified as the staff engineer to be laid off because he received the lowest overall score among the group of seven staff engineers. [*Id.* ¶ 27.]

Terminating Plaintiff as part of the reorganization of the QA Group was a legitimate business decision, and there is no evidence that suggests otherwise. After terminating Plaintiff, his manual testing duties were transferred to Somaiya or integrated elsewhere within the QA Group. [*Id.* ¶ 26.]

B.  **Plaintiff's Refusal to Accept Severance or Mitigate His Alleged Damages.**

Under its RIF Practice, Microsemi offered Plaintiff severance of nearly $85,000.00 (three weeks base pay plus one week base pay for each complete year of service, for a total of 30 weeks' severance pay). [Ex. 1, Sheffield Decl. ¶ 25.] Plaintiff declined the Company's offer. [Ex. 3, Hoang Dep. 94:1–3; 96:2–5.] After refusing Microsemi's severance offer, Plaintiff thought it was "important" to find a new job and began his search "a few weeks" after Microsemi eliminated his position. [*Id.* 77:2-9.] Plaintiff was willing to relocate from Houston for a job, to any geographic area without snow. [*Id.* 54:22-24.] In February 2018, there were "dozens of job openings for System Development Managers in the Houston area." [Ex. 10, Dr. Dwight Steward Expert Report.] Yet, in February 2018, Plaintiff applied to only **seven** jobs in Houston. [Ex. 11, Mitigation Documents at Hoang 00499, 501, 513-518.] Plaintiff applied to these jobs using a resume with his name misspelled as "T-A-R-N." [Ex. 11 at Hoang 00491-492.] When these employers responded and called him by the wrong name, Plaintiff made no effort to correct them. [Ex. 3, Hoang Dep. 86:21–23.] Yet, the fact that prospective employers did not know his real name caused Plaintiff no concern. [*Id.*]

After being rejected for those seven jobs, Plaintiff inexplicably stopped his job search for over twelve months. [*Id.* 100:12–22.] In March 2019, Plaintiff used a different resume (with his name spelled correctly) to apply for and secure an IT position at Wharton County Junior College.

9

[*Id.* 47:12-24; Ex. 11 at Hoang 00520-523.] Since March 2019, Plaintiff has not looked for different employment because he believes he is "too old" to be a software engineer. [*Id.* 223:20-224:3.]

## VI.   ARGUMENT

Defendants are entitled to judgment as a matter of law because Plaintiff cannot establish a *prima facie* claim for race/national origin or age discrimination under federal or state law. Plaintiff has no direct evidence of either race/national origin or age discrimination, so he is required to meet the high burden the Fifth Circuit imposes on plaintiffs in RIF discrimination cases. *See, e.g., Villarreal v. Texas A & M Sys.*, 561 Fed. App'x 355, 358 (5th Cir. 2014). Under the Fifth Circuit's standard for RIF cases, Plaintiff's *prima facie* case must establish that: (1) Microsemi consciously refused to retain him as a result of his protected class(es), or (2) Microsemi regarded his protected class(es) as a negative factor when deciding to eliminate Plaintiff's position. *Chavarria v. Despachos Del Notre, Inc.*, 390 F. Supp. 2d 591, 597 (S.D. Tex. 2005). Plaintiff cannot establish a *prima facie* case because Microsemi never hired a manager to replace him, and the two other managers whom Microsemi evaluated with Plaintiff for the RIF were both Asian (though not Vietnamese), and one of the other two was nearly Plaintiff's age. Nor is there any evidence to which Plaintiff can point to establish that Microsemi considered his protected class(es) during the RIF.

Even if Plaintiff could establish a *prima facie* claim of race/national origin or age discrimination, Microsemi had a legitimate reason for implementing the RIF, and Plaintiff cannot show that reason was merely pretext for discrimination. To reorganize the QA Group and emphasize automated rather than manual testing, Sheffield concluded he only needed two of the three QA Group managers. Following Microsemi's RIF Practice, Sheffield evaluated and compared three similarly situated managers: Plaintiff, Somaiya, and Chandrasekaran. Despite

10

Plaintiff's subjective disagreement with Sheffield's evaluation, the record is devoid of any evidence of discriminatory pretext. For the reasons set forth more fully below, the Court should grant summary judgment in Defendants' favor.

A.    **Plaintiff Cannot Establish a *Prima Facie* Case of Race or National Origin Discrimination Under Title VII, the TCHRA, or Section 1981.**

The Fifth Circuit has articulated what *McDonnell Douglas* requires a plaintiff to establish to show a *prima facie* case when alleging discrimination in a RIF. *Smith v. Houston Indep. Sch. Dist.*, No. 4:12-CV-3083, 2014 WL 4471386, at *4 (S.D. Tex. Sept. 9, 2014). In RIF cases, the plaintiff's *prima facie* case must include a showing that he was qualified to assume another available position, and evidence on which a fact finder could reasonably conclude that the employer intended to discriminate against him through the adverse RIF action. *Villareal v. Texas A & M Sys.*, 561 Fed. App'x 355, 358 (5th Cir. 2014).

Plaintiff cannot establish a *prima facie* case under the Fifth Circuit's standard because there is no evidence, disputed or not, showing that Microsemi consciously refused to retain him as a result of his protected class(es), or that it regarded his race or national origin as a negative factor when making its decision to eliminate Plaintiff's position as part of the RIF. *Chavarria*, 390 F. Supp. 2d at 597. Consequently, Defendants are entitled to judgment as a matter of law.

Fundamentally, Plaintiff's race/national origin claims fail because he cannot show that someone outside his protected categories remained in his position. Nobody did. After observing the QA Group for several months, Sheffield concluded that he needed one less manual testing manager and one less manual testing staff engineer to transition the QA Group to greater automated testing and Agile manufacturing processes. After eliminating Plaintiff's position, Microsemi transferred most of his manual testing responsibilities to Somaiya. Microsemi never hired a manager to replace Plaintiff, and Plaintiff can point to no evidence otherwise.

Further, Plaintiff cannot show that Microsemi consciously refused to retain him as a result of his race or national origin. There is no evidence that the Microsemi decision-makers knew his race or national origin.  He admitted he never disclosed either to Sheffield, and there is no evidence he disclosed his national origin to Microsemi. [Ex. 3, Hoang Dep. 166:9–167:16; 216:25–217:1.] Plaintiff instead asserts that Sheffield knew he was Vietnamese based upon a rationale that the law, and we as a society, abhor; specifically, that: (1) people can identify another person's national origin by their looks – and not just identify them as Asian or Caucasian, but know that their national origin is Chinese or Vietnamese rather than Korean or Laotian, or German rather than Dutch or French; (2) Plaintiff believes he looks Vietnamese (as opposed, for example, to looking Korean or Laotian); and (3) Sheffield knew that Plaintiff is Vietnamese by looking at him. [*Id.* 217:18–218:2; 234:6–25.] Yet, Plaintiff's own testimony precludes the racist conclusion he urges the Court to accept. While Plaintiff contends that everyone has Marvel Hero-like abilities to decipher a person's national origin by looking that them, he testified that he did not know that his co-worker of many years, Mike Tran – the Microsemi employee who recommended Sheffield to Microsemi and recruited him to be his boss was Vietnamese. [*Id.*] Plaintiff cannot seriously ask the Court to reach racist conclusions on the basis of "looks" when his own testimony contradicts the foundation of that assertion, even when they share the same national origin and have the most common Vietnamese names. *Cf.* Vietnamese Genealogy, *Vietnam Online: Travel Guide For the New Decade*, https://www.vietnamonline.com/az/vietnam-genealogy.html (last visited Oct. 1, 2021) ("Tran" is surname of 11% of all Vietnamese, "Hoang" of 5%).

Plaintiff's *prima facie* case also falls short because he no evidence that shows, or even suggests, that Sheffield regarded his race or national origin as a factor when making his decision to eliminate Plaintiff's position. Apart from the absence of evidence showing that Sheffield *knew*

Plaintiff's national origin, there is no evidence that he considered race or national origin in evaluating the RIF candidates – much less, any evidence that would allow a reasonable fact finder to conclude that Sheffield was biased against people of Vietnamese national origin (particularly when he was recruited by an engineer who was Vietnamese and had previously worked for Sheffield for nearly a decade). No jury could reasonably conclude on such facts that Sheffield was biased against people of Vietnamese origin.

Microsemi's RIF Practice evaluated four general factors, none of which involved national origin; specifically: Job Criticality, Flexibility, Performance, and Years of Company Service. Further, the Job Criticality category was broken down to evaluate five legitimate factors unrelated to race or national origin: 1) Depth of Agile System Understanding; 2) Agile System Engagement and Implementation; 3) Analytical & Troubleshooting Skills; 4) Ability to Quickly Assess and Identify & Solve Validation Issues; and 5) Diversified and Broad Product Knowledge. Moreover, all three QA managers, which is the group Sheffield rated and ranked to select one for the RIF, were Asian (though not all Vietnamese), and Sheffield had the support of approval of HR during each step of the RIF to ensure compliance with EEO laws and company policies. Because Plaintiff has no *prima facie* case, Defendants are entitled to judgment as a matter of law.

B. **Plaintiff Cannot Establish a *Prima Facie* Case of Age Discrimination Under the ADEA or TCHRA.**

A *prima facie* case in an age discrimination RIF case requires Plaintiff to show that: (1) he is within the protected age group under the ADEA; (2) he was adversely affected by the employer's decision; (3) he was qualified to assume another position at the time of discharge; and (4) Microsemi intended to discriminate against him in reaching its decision to discharge him. *Woodhouse v. Magnolia Hosp.*, 92 F.3d 248, 252 (5th Cir. 1996). As with race/national origin discrimination, Plaintiff must show that (1) Microsemi consciously refused to retain him as a result

of his age, or (2) Microsemi regarded his age as a negative factor when making its decision to eliminate Plaintiff's position as part of the RIF. *Chavarria*, 390 F. Supp. 2d at 597.

Under the ADEA, Plaintiff also has the burden of persuasion to show that age was the "but-for" cause of Microsemi's decision. *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 377 (5th Cir. 2001). In other words, Plaintiff must show that if not for his age, Microsemi would not have eliminated his position when Sheffield reorganized the QA Group. Under the TCHRA, Plaintiff need only show that age was a 'motivating factor' in [Microsemi's] decision" rather than the "but-for" cause. *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 439 (5th Cir. 2012). Under both federal and state law, Plaintiff must ultimately "create[] [an] issue of material fact regarding [Microsemi's] discriminatory animus in terminating him." *Id.* (internal quotation marks and citations omitted). Once again, Plaintiff cannot even set forth a *prima facie* case.

First, the Fifth Circuit consistently finds that discrimination is less likely when the decision makers are all in the same protected class as the plaintiff. *See Kelly v. Costco Wholesale Corp.*, 632 Fed. App'x 779, 783–84 (5th Cir. 2015). A director's membership in the same protected class as the discharged employee bolsters the inference that age discrimination was not the reason for the employee's discharge. *See McMichael v. Transocean Offshore Deepwater Drilling, Inc.*, 934 F.3d 447, 460–61 (5th Cir. 2019). In such situations, the logical inference is that age was not a factor in the discharge. *Id.* at 461. At the time Microsemi implemented the RIF, Sheffield was 48 years old and in the same protected age class under the ADEA. Thus, there exists a presumption that Sheffield did not discriminate against Plaintiff on the basis of his age. This presumption is bolstered by the fact that Somaiya – a similarly situated QA Group manager in the RIF group – was 46 years old and in the same protected class as Plaintiff.

14

Second, Plaintiff has not shown any basis for contending there is nexus between his termination and his age. *Houser v. Sears, Roebuck & Co.*, 627 F.2d 756 (5th Cir. 1980) (holding that employee's subjective belief that his termination resulted from age discrimination was insufficient to make an issue for the jury in the face of proof showing an adequate, nondiscriminatory reason). In fact, Plaintiff produced no evidence whatsoever that Sheffield even knew his age. Sheffield evaluated the managers based on objective criteria in accordance with Microsemi's RIF Practice. Plaintiff's conclusory allegations are not supported by the record, but only by Plaintiff's subjective belief that Sheffield *should* have known Plaintiff's age because Plaintiff thinks he "looks" his age. Plaintiff's subjective beliefs about how hold *he* thinks he looks falls far short of his burden to prove that age was the "but-for" cause or a "motivating factor" in Microsemi's decision to eliminate his position. No evidence suggests that Sheffield accounted for his age negatively in the RIF, while he received a perfect score in the years of service RIF rating. For these reasons, the Court should grant summary judgment in Defendants' favor.

C.   **Microsemi's Nondiscriminatory Reason for Eliminating Plaintiff's Position Is Legitimate, and Plaintiff Cannot Point to Any Evidence Demonstrating it is a Pretext for Discrimination Based on his Age or National Origin.**

Even assuming that Plaintiff were able to establish a *prima facie* case of race/national origin or age discrimination, Microsemi had a legitimate, non-discriminatory reason for the elimination of Plaintiff's position. Plaintiff's employment ended because Sheffield reorganized the QA group and emphasize automated testing, which included eliminating one of the three QA Group manager positions. Defendants' burden at this stage is one of production only, not persuasion. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000). "The employer need only articulate a lawful reason for the plaintiff's discharge, regardless of what the persuasiveness may or may not be." *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 958 (5th Cir. 1993); *see also St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993) (courts cannot assess

credibility of a defendant's stated reason if it is legitimate). Microsemi's mere articulation of its reason for the RIF rebuts Plaintiff's *prima facie* case.

As the Fifth Circuit has repeatedly recognized, a RIF is a presumptively legitimate, nondiscriminatory reason for discharge. *E.E.O.C. v. Tex. Instruments Inc.*, 100 F.3d 1173, 1181 (5th Cir. 1996). Indeed, the Fifth Circuit has held that, under circumstances similar to those here – a layoff based on the evaluation of each relevant employee's likely *future* success following a reorganization – the RIF was a legitimate, nondiscriminatory reason, defeating any *prima facie* case he could establish on any of his claims. *Smith v. Bd. of Supervisors of S. Univ.*, 656 Fed. App'x. 30, 33 (5th Cir. 2016); *see also Roberson v. Alltel Info. Servs.*, 373 F.3d 647 (5th Cir. 2004) (finding no basis for discrimination claim where termination based on comparative evaluation and no evidence demonstrated that company relied on impermissible race, sex, or age criteria).

Consequently, the burden shifts to Plaintiff to rebut Microsemi's explanation either by showing that the reason given is pretext for unlawful discrimination, or the proffered reason, while true, is only one of the reasons for its conduct and another motivating factor was Plaintiff's protected class(es). *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 411–12 (5th Cir. 2007). Neither a minor deviation from Microsemi's RIF Practice nor Plaintiff's disagreement with his manager's evaluation constitutes substantial evidence of pretext sufficient to create a jury issue. *See McMichael*, 934 F.3d at 459–460 (5th Cir. 2019); *Elliot v. Grp. Med. & Surgical Serv.*, 714 F.2d 556, 567 (5th Cir. 1983).

Here, there is no competing evidence regarding the facts, and no evidence to dispute Microsemi's stated reason for Plaintiff's separation was a pretext for intentional discrimination. Sheffield decided to eliminate Plaintiff's position after concluding that the QA Group needed only two managers given his focus on automated testing. Sheffield followed Microsemi's RIF Practice,

and involved HR during each step. As part of this process, Sheffield, Lisa Manzo and Bondi worked together to craft five objective factors for the "Job Criticality" ranking. Bondi approved these categories, as well as the RIF results and decision to terminate Plaintiff's employment. There also is no evidence that Sheffield was motivated by Plaintiff's race/national origin or age in making the decision to eliminate the position within the QA group.

Although Plaintiff disagrees with Sheffield's assessments regarding how critical he was to the future of the QA Group, and the criteria Sheffield used to base his assessments, he cannot support his discrimination claims with his personal assessment of his value, or even the judgments of former managers who evaluated his value as a manager in the past. The methods of evaluation a company uses in a RIF, including decisions about how to conduct the RIF, are business judgments made by the company which the Fifth Circuit does not allow plaintiffs (or courts) to second-guess without a meaningful showing of discriminatory animus showing pretext for illegal discrimination, or other evidence proving discrimination. *See e.g.*, *Rosenblatt v. 7-Eleven, Inc.*, No. CIV.A. 3:06-CV-0957D, 2007 WL 2187252, at *7 (N.D. Tex. July 27, 2007) (refusing to find pretext where a company used a novel "weighted factor analysis" to terminate an employee because to do so would be to second-guess the employment decisions of the company*); see also Bienkowski v. Am. Airlines, Inc.*, 851 F.2d 1503, 1507–08 (5th Cir.1988) ("The ADEA was not intended to be a vehicle for judicial second-guessing of employment decisions, nor was it intended to transform the courts into personnel managers.").

Fatal to his claims, Plaintiff has no actual evidence that Sheffield even knew his age or race/national origin. Plaintiff does not remember ever telling Sheffield either, but conclusively claims that Sheffield should have assumed his protected class(es) by merely looking at him. Ultimately, Plaintiff's belief that he looked 63 years old and Vietnamese does not even satisfy his

17

*prima facie* burden, much less, demonstrate a pretext for discrimination. Plaintiff is left only with his bare, subjective belief that he was treated unfairly, and that is not enough to survive summary judgment. *Roberson*, 373 F.3d at 654.

D.   **Plaintiff's Claims for Damages Are Barred Because He Failed to Mitigate Any Alleged Damages, and He Produced Evidence That Would Have Justified Termination of His Employment.**

Even if Plaintiff were able to establish a *prima facie* claim of race/national origin or age discrimination or that Microsemi's articulated reason for eliminating his job position was pretext for discrimination, his damages claims are barred because he failed to reasonably mitigate them. *See Powers v. Northside Indep. Sch. Dist.*, 951 F.3d 298, 308–309 (5th Cir. 2020) (holding that plaintiffs are not entitled to recover lost wages if they fail to "exercise reasonable diligence" and find "substantially equivalent" employment). After Microsemi terminated his employment in January 2018, Plaintiff made no reasonable attempts to find new employment. Despite being willing to relocate and believing that it was important to find a new job, Plaintiff applied to only **seven** out of the "dozens of job openings for System Development Managers in the Houston area." Plaintiff obviously did not make reasonable efforts even to obtain the 7 jobs to which he applied – he sent a resume on which he did not even spell his name correctly. Even after those prospective employers responded and addressed him using the incorrect name he had provided, he made no efforts to correct them and testified that it was during his deposition that he first realized he had spelt his name incorrectly on the resume. [Ex. 3, Hoang Dep. 81:11–13.]

After applying to only seven jobs in February 2018, Plaintiff waited over one year to apply for his current job at a Junior College (using a resume with his name spelled correctly). Plaintiff made no reasonable efforts to find a similar job after Microchip terminated his employment in January 2018, and any claims for back or front pay are consequently barred.

18

Further, Plaintiff's claims for damages are barred because he produced evidence of misconduct that would have warranted termination of his employment. "When there is after-acquired evidence that would justify a plaintiff's termination, front pay and reinstatement are not appropriate remedies, although back pay may be awarded from the date of the unlawful discharge to the date the new information was discovered." *Weeks v. Coury*, 951 F. Supp. 1264, 1274 (S.D. Tex. 1996) (citations omitted). Defendants need establish only that that "the wrong-doing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge." *Id.*

Defendants discovered Plaintiff's wrongdoing on November 21, 2019 when, as part of his response to written discovery requests, Plaintiff produced emails containing Microsemi's confidential information. [Ex. 12, Lauren Carr Decl. ¶ 9.] Plaintiff testified that he copied these emails containing confidential information to a personal USB storage device, without Microsemi's permission and outside the scope of his Microsemi job duties. [Ex. 3, Hoang Dep. 30:7–14.] Additionally, Plaintiff testified that he was aware of Microsemi's Confidentiality Policy and its training on such policies. [*Id.* 22:6-23:11; Ex. 12, Carr Decl. ¶ 6.] Had Defendants learned of Plaintiff's misconduct, Director of Microchip's Global Human Resources Lauren Carr would have spoken to Plaintiff to inquire why he had been violating Microsemi's Confidentiality Policy. [Ex. 12, Carr Decl. ¶ 13.] Unless she became convinced that Plaintiff had done so to fulfill his responsibilities to the Company, Ms. Carr would have terminated his employment. [*Id.*] Indeed, Ms. Carr investigated and terminated a different Microsemi employee in November 2018 for violating the Defendants' Confidentiality Policy. [*Id.*] Even if Plaintiff were able to establish a *prima facie* claim of discrimination or rebut Microsemi's proffered reason for its decision as

pretext, Plaintiff would not be entitled to front pay and any back pay damages must be cut off on the day Defendants' learned of Plaintiff's misconduct.

VII.   <strong>CONCLUSION</strong>

For the foregoing reasons, Defendants request the Court grant summary judgment in their favor and dismiss Plaintiff Tam Hoang's lawsuit with prejudice.

Dated this <u>1st</u> day of October 2021.

Respectfully submitted,

 */s/Mark G. Kisicki*
Mark G. Kisicki, *pro hac vice*
State Bar of Arizona:  016953
Aaron S. Nava, *pro hac vice*
State Bar of Arizona: 036428
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
2415 East Camelback Road, Suite 800
Phoenix, AZ  85718
602-778-3700 – Telephone
602-778-3750 – Facsimile
Mark.Kisicki@ogletreedeakins.com
Aaron.Nava@ogletreedeakins.com

Carolyn Russell
State Bar No. 24003913
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
500 Dallas St., Ste. 3000
Houston, TX  77002
713-655-0855 – Telephone
713-655-0020 – Facsimile
carolyn.russell@ogletreedeakins.com

**ATTORNEYS-IN-CHARGE FOR DEFENDANTS**

**OF COUNSEL:**

Devin S. Vasquez
State Bar No. 24098543
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
500 Dallas St., Ste. 3000
Houston, TX  77002
713-655-0855 – Telephone
713-655-0020 – Facsimile
Devin.vasquez@ogletreedeakins.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 1st day of October 2021, the foregoing was submitted for electronic filing with the Clerk of the court using the CM/ECF system, which will send notification of such filing to the following:

G. Scott Fiddler
Brooke A. Leondar
JACKSON WALKER LLP
1401 McKinney Street, Suite 1900
Houston, TX  77010
sfiddler@jw.com
bleondar@jw.com

*/s/ Mark G. Kisicki*
Mark G. Kisicki

8783328.1

22